UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| BEVERLY PALMER, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 16-CV-2091 |
| ) | |
| UNIVERSITY OF ILLINOIS, ) | |
| ) | |
| Defendant. ) | |

# ORDER

Plaintiff, Beverly Palmer, filed a *pro se* Complaint (#1) alleging that Defendant, the University of Illinois, discriminated against her on the basis of color, race, and use of leave. The complaint further alleged harassment, a hostile work environment, and retaliation. On June 1, 2017, Defendant filed a Motion for Summary Judgment (#34). Plaintiff filed her Response (#37) on July 20, 2017. Defendant filed its Reply (#39) on August 4, 2017. This court has carefully reviewed the briefs and documents filed by the parties. For the following reasons, Defendant's Motion for Summary Judgment (#34) is GRANTED.

## FACTS[1]

Plaintiff, who is African American, is an Office Support Specialist in the Academic Instructional Service Office in the College of Education at the University of Illinois. She went on disability leave in April of 2015. She remains on disability leave.

Plaintiff's position is a civil service position governed by Civil Service Rules as well as a contract between Plaintiff's union and Defendant. Employees in Plaintiff's position are evaluated annually, and they can file a formal response to their evaluations. If there are issues with an employee's performance, they are addressed through a "Performance Partnership Program" which includes Performance Improvement Discussions and Work Performance Reminders. A Performance Improvement Discussion is an informal, non-disciplinary, supervisory discussion aimed at correcting performance issues. A Work Performance Reminder is the first formal step of the University Discipline System. The next step is a written reminder, with further steps leading to discharge if the concerns of the University are not met.

From 2011 until October of 2013, Laura Ketchum supervised Plaintiff's work. Ketchum was the Business Manager in the College of Education. Ketchum prepared Plaintiff's annual evaluations for the years ending in June of 2012 and 2013. In the 2012 evaluation, Ketchum marked "needs improvement" for three categories: quality of

---

[1] Plaintiff did not respond to Defendant's Facts. Thus, pursuant to Rule 7.1(D)(2)(b)(6) of the Local Rules of the Central District of Illinois, Defendant's Facts are deemed admitted. This order includes only facts which would be admissible at trial and which are adequately supported and material to the issues in this case. Many of Plaintiff's alleged "facts" do not fit that description.

work; knowledge of job; and attendance, reliability and dependability. In the 2013 evaluation, Ketchum marked "needs improvement" for the category of attendance, reliability and dependability.

Plaintiff did not have an immediate supervisor after Ketchum left that role. Dr. Christopher Span, an Associate Dean of the College of Education, filled that role from October of 2013 until approximately January of 2015. Span is African American. Span is the immediate past co-president of the Black Faculty and Academic Professional Alliances. Amongst numerous awards he has received, the Black Graduate Student Association named Span Faculty of the Year in 2007, and the Black Champaign-Urbana Campus Community Project named him a Difference Maker in Our Community in 2010. He is credited with successfully encouraging the accomplishments of minority students in the College of Education.

In August of 2013, Plaintiff completed her Bachelor of Arts through the General Studies Degree Program at Eastern Illinois University. On October 31, 2013, Plaintiff wrote a letter to Span. In the letter, Plaintiff informed Span of her accomplishment in obtaining her degree, noted that she was recently given additional duties, and requested a meeting to discuss new job duties and the possibility of a pay raise.

A union contract governed salaries for Plaintiff's position. In the Fall of 2013, Plaintiff was salary grade 14, step 32. Proceeding to higher steps within grade 14 was based on time in grade only--not on academic or other achievement. Attaining a college degree was not by itself a basis for a pay raise or a promotion. To become eligible for

promotion, Plaintiff needed to pass another civil service exam. Plaintiff took the exam once, but did not pass it. Attaining her college degree did make Plaintiff eligible to apply for academic professional positions, but Plaintiff was not interested in doing so. In December of 2013, Span offered to facilitate the transfer of Plaintiff to a different position within the college, but Plaintiff declined.

On April 29, 2014, Plaintiff requested additional responsibilities upon the departure of a coworker. Her request was not granted. On May 20, 2014, Plaintiff met with Dean Mary Kalantzis to complain that Span did not meet with her, respond to her request for a pay raise, or assign her additional responsibilities.

Span prepared Plaintiff's evaluation for the year ending June 30, 2014. Because he did not have any involvement with Plaintiff's day-to-day performance of her job responsibilities, Span requested input from the faculty and department heads who did. Plaintiff's evaluation was based upon the feedback Span received. Span evaluated all of the Office Support Specialists in the Academic Instructional Service Office in the same way.

The feedback Span received included statements that Plaintiff lacked communication skills, failed to complete assignments, called to ask for information she should have been able to look up herself, and was not overly helpful or very friendly. In a memo included in Plaintiff's evaluation, Span detailed those concerns. Span explained that Plaintiff needed to improve in the areas of: attendance, reliability and dependability; communication; planning and organizational effectiveness; quality of

work; and cooperation with others. Span acknowledged Plaintiff's approval for leave pursuant to the Family and Medical Leave Act (FMLA), instructing her to notify department executives when she was going to be away from the office. Span offered suggestions on how Plaintiff could improve her work performance, stating that in six months he would ask the departments to provide follow-up to ensure the concerns identified were minimized. Span stated that he hoped his comments would aid Plaintiff in understanding and meeting expectations. He noted that Plaintiff also possessed a number of strengths, including making sound judgments and demonstrating a good knowledge of her work. Pursuant to the union contract, the evaluation and memo were not discipline.

Span discussed the evaluation with Plaintiff on July 1, 2014. On July 8, 2014, Plaintiff responded to the evaluation in a memo. She denied having any of the problems mentioned in her evaluation. She accused Span of defaming her character and slandering her integrity.[2] She stated that she felt Span "treat[ed] Black employees different than White employees," that the evaluation was a ploy to have her terminated, and that Span was retaliating against her for speaking with Kalantzis about Span and for past grievances filed against the College. Plaintiff claimed she was the victim of

---

[2] In her deposition, Plaintiff could not identify what parts of the evaluation were defamatory or slanderous.

racial bias for her whole career at the University, and stated that she would be filing complaints with the Department of Labor, the U.S. Equal Employment Opportunity Commission (EEOC), and her union.

On July 15, 2014, Plaintiff filed a complaint with the Department of Labor. She alleged she was discriminated against in violation of the FMLA for about 20 years. The Department found no wrongdoing by Defendant.

On July 18, 2014, Plaintiff filed a grievance through University channels. Eric Smith investigated the complaint. He concluded that there was no evidence Plaintiff was treated differently in regards to promotional opportunities because of her race; she did not take the civil service exam needed to place her name on the promotional list. Smith concluded there was no evidence that Plaintiff's evaluation was based on her FMLA status or her race.

On July 24, 2014, Plaintiff met with Span and Barb Geissler for a Performance Improvement Discussion. In her role as the Executive Assistant Dean for Business Operations in the College of Education, Geissler was involved with the supervision of personnel, including Plaintiff. Span and Geissler did not criticize Plaintiff for using FMLA leave. They asked that she keep coworkers and department executives notified when she was taking that leave. On August 8, 2014, Plaintiff responded in a memo, disagreeing with the assessment of her performance and asserting that she was "singled out" and that her evaluation created a hostile working environment.

Span continued to learn of additional concerns with Plaintiff's work. Cris Susan Mayo was the Director of Online Learning in the Department of Education Policy, Organization and Leadership (EPOL), a department supported by Plaintiff. On September 26, 2014, Ketchum emailed Span about issues arising from Plaintiff's interactions with Mayo. Plaintiff, who was in charge of handling the Spring 2015 EPOL course schedule, emailed it to Mayo for review. Mayo noticed numerous problems with it. In her email to Span, Ketchum reported that Plaintiff did not follow up regarding additions or deletions to the schedule, and that Plaintiff asked Ketchum to fix the schedule even though Plaintiff should have been able to do it.

On October 23, 2014, Span and Geissler met with Plaintiff to discuss that situation. They emphasized the importance of accurate scheduling information, and Plaintiff's responsibility to double-check the work to ensure accuracy. The next day, Plaintiff emailed Span to explain why she did not think the errors were her fault. She wrote that she helped fix the errors, and that she felt disrespected.

Jena Pfoff was the Resource and Policy Analyst for the Academic and Instructional Services Unit in one of the departments supported by Plaintiff. On October 30, 2014, she emailed Span about issues with Plaintiff's work. Pfoff wrote that when she asked Plaintiff to create a section of a course, which was a part of Plaintiff's job responsibilities, Plaintiff told Pfoff to do it herself. Pfoff also wrote that Plaintiff

made errors in registering students for online sections. Pfoff wanted permission to process all online sections and overrides for those courses herself so that students would be placed into the correct sections.

Anne Haas Dyson was a professor in the EPOL Department. On November 8, 2014, Dyson emailed Plaintiff with the subject "URGENT! URGENT! URGENT!" to describe a "BIG" mistake in registration for Dyson's Spring 2015 class. Dyson also notified Ketchum of the mistake. On November 10, 2014, Ketchum emailed Dyson to say that Ketchum corrected the problem. In an email cc'd to Span, Plaintiff thanked Ketchum for making the change. Plaintiff said she was not to blame for the mistake.

Span and Plaintiff corresponded about the Dyson incident via email, on November 10, 2014. Span told Plaintiff that it was unacceptable that EPOL raised three concerns about her in two months. He wrote that it was Plaintiff's responsibility to check the information she obtained for accuracy. He expressed concern that Ketchum, not Plaintiff, corrected the error. He noted that he and Geissler previously spoke to Plaintiff about the same issue. He said that he found another online course error that he believed Plaintiff caused. He was going to document Plaintiff's mistakes and require her to fix her own errors. He requested Plaintiff check the EPOL schedule for accuracy and for consistency with professor expectations, and email a report to him by November 14, 2014 at 5 p.m. Plaintiff responded that she was concerned by the tone of Span's email. She alleged that she was treated differently than other staff and subjected to a hostile work environment, and that she was assigned to the EPOL schedule and

Grad Awards Committee in retaliation for filing a complaint with the US Department of Labor. Span responded that he expected Plaintiff to meet her job responsibilities. On November 14, 2015, Plaintiff emailed Span her report on the EPOL schedule. It was not complete.

Earlier in November 2014, Span assigned Plaintiff to serve as the staff member for the Graduate Awards Committee. That assignment was within Plaintiff's employee classification, but on November 11, 2014, Plaintiff emailed Span to decline it. In that email, she complained of racial discrimination, intimidation, and possible retaliation. She wrote that the assignment was a ploy for failure. She acknowledged in her deposition that she was capable of doing the assignment, and that Span had the right to appoint her to the committee. At a Performance Improvement Discussion on December 5, 2014, Span and Geissler advised Plaintiff that she could not refuse work for which she was qualified. They issued a Work Performance Reminder memo that day.

On December 17, 2014, Plaintiff filed charges jointly with the Illinois Department of Human Rights (IDHR) and the EEOC. Plaintiff alleged that Span evaluated her differently and threatened her due to her race or in retaliation for filing complaints and grievances concerning discrimination. She alleged that Defendant denied her a pay raise in November 2013 and evaluated her negatively on July 1, 2014 due to her race. The IDHR investigated the complaint. On January 6, 2016, the IDHR concluded there was a lack of substantial evidence to support it. The EEOC adopted the IDHR's findings and dismissed Plaintiff's EEOC claim on June 29, 2016.

ANALYSIS

I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). "[T]he district court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Winters v. Fru-Con, Inc.*, 498 F.3d 734, 744 (7th Cir. 2007). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). However, a court's favor toward the nonmoving party does not extend to drawing "[i]nferences that are supported by only speculation or conjecture." *Singer*, 593 F.3d at 533, quoting *Fischer v. Avanade, Inc.*, 519 F.3d 393, 401 (7th Cir. 2008).

"The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). Summary judgment "is the 'put up or shut up' moment in a lawsuit, when a party must show

what evidence it has that would convince a trier of fact to accept its version of events." *Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1111 (7th Cir. 2004), quoting *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Specifically, to survive summary judgment, "the nonmoving party must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 936 (7th Cir. 2007), *citing Celotex Corp.*, 477 U.S. at 322-23.

The Seventh Circuit has recently stated that the legal standard for determining whether an employment discrimination claim should survive summary judgment is "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The court explained:

> Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the "direct" evidence does so, or the "indirect" evidence. Evidence is evidence. Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled "direct" or "indirect."

*Id.*

## II. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

To survive summary judgment on her employment discrimination claim, Plaintiff needed to produce evidence that would permit a reasonable fact finder to conclude that her race caused Defendant to take an adverse employment action. See

*Ortiz*, 834 F.3d at 765. Plaintiff does not point to any racially charged or discriminatory statements, policies, or actions made by Defendant. Thus, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies.[3]

Under *McDonnell Douglas*, a plaintiff establishes a *prima facie* case of racial discrimination if she demonstrates, by a preponderance of the evidence, that: (1) she is a member of a protected class; (2) she was meeting her employer's legitimate employment expectations; (3) in spite of meeting the legitimate employment expectations of her employer, she suffered an adverse employment action; and (4) she was treated less favorably than one or more similarly situated employees who were not in the protected class. *McDonnell Douglas*, 411 U.S. at 802; *Ferrill*, 860 F.3d at 500. Similarly situated employees must be "directly comparable to the plaintiff in all material respects, but they need not be identical in every conceivable way." *Coleman v. Donahoe*, 667 F.3d 835, 850 (7th Cir. 2012) (internal quotations and citations omitted).

In the usual case, a plaintiff must be able to establish "that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id.* at 846-47 (internal quotations and citations omitted).

---

[3]*Ortiz* did not displace the *McDonnell Douglas* burden-shifting analysis. *Ferrill v. Oak-Creek Franklin Joint School Dist.*, 860 F.3d 494, 499-500 (7th Cir. 2017).

If a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for the employer's action. *McDonnell Douglas*, 411 U.S. at 802; *Ferrill*, 860 F.3d at 500. If the employer does so, the burden shifts back to the plaintiff to rebut that explanation by presenting evidence sufficient to enable a trier of fact to find that the employer's proffered explanation is pretextual. *Ferrill*, 860 F.3d at 500. Pretextual "means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000). It is only necessary to reach the issue of pretext if a plaintiff establishes a *prima facie* case. *Brummett v. Lee Enterprises, Inc.*, 284 F.3d 742, 744 (7th Cir. 2002).

In this case, Plaintiff alleges that Defendant discriminated against her on the basis of her race by not giving her a salary increase or promotion when she obtained her college degree. Plaintiff states that white employees received pay raises after obtaining college degrees, but she did not. However, she has not met her burden to support that allegation with any admissible evidence. She purports to meet her burden through an affidavit from Alissa Young showing that Young received a one-time bonus of $500 upon completion of her Masters of Social Work degree, in 2002, when working in the Department of Human and Community Development at the University of Illinois. But, Young is not a similarly situated employee outside the protected class. Young worked an unknown job in a different department and received a bonus, not a raise, over a decade earlier, upon attaining a higher level of degree, and her race is unknown.

Moreover, the union contract provided for raises based solely upon time in a salary grade, and promotion was not possible until Plaintiff passed another civil service exam.

Plaintiff also alleges that Span discriminated against her by soliciting feedback only about African American employees. However, that assertion is similarly unsupported by any admissible evidence. Span's evaluating another African American employee in the same way as Plaintiff does not show that Span evaluated their white coworkers differently. No admissible evidence contradicts Span's declaration that he evaluated everyone in the same way. Plaintiff's Exhibits even show that Pfoff indicated to Plaintiff that Span solicited feedback from the departments about Pfoff's performance, too, and that he also solicited feedback about Myranda Lyons. Both Pfoff and Lyons are white.

Plaintiff claims that she told Span that Pfoff improperly registered a student. But, that is insufficient to show differential treatment of a similarly situated employee. No admissible evidence demonstrates what type of evaluation or discipline Pfoff or any other employee received, or whether Pfoff or any other employee's performance overall was comparable to Plaintiff's. Because Plaintiff fails to identify any similarly situated employee outside of the protected class who Defendant treated more favorably, she fails to establish a *prima facie* case.

Plaintiff argues that Span unfairly evaluated her and unfairly criticized her. However, there is no evidence that Span did not honestly believe the performance-based reasons he offered for his actions. There is no evidence that Plaintiff's evaluation,

Performance Improvement Discussion, Work Performance Reminder, or any other interactions with Span were related in any way to Plaintiff's race. This court cannot act as a super-personnel department that sits in review of the wisdom of Defendant's personnel decisions. See *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 884 (7th Cir. 2016). Because a fact finder could not reasonably conclude from the evidence that Defendant discriminated against Plaintiff, Defendant is entitled to summary judgment on Plaintiff's racial discrimination claim. See *Johnson v. Chicago Transit Auth.*, 2017 WL 4792192, at *2 (7th Cir. Oct. 24, 2017).

Plaintiff's complaint also contains a harassment/hostile work environment claim. "For workplace conduct to constitute a hostile work environment actionable under Title VII, the harassment must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive environment." *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1048 (7th Cir. 2000) (internal quotations and citations omitted). Here, Plaintiff has not shown such severe or pervasive racial harassment. There is simply no evidence of racial discrimination. Plaintiff alleges that she went on disability leave because of a hostile work environment, but that allegation does not warrant further consideration because Plaintiff failed to present any evidence of a hostile work environment.

Lastly, Plaintiff argues that Span retaliated against her. "To make out a claim of retaliation under either the FMLA or Title VII, a plaintiff must show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the two." *King v. Ford Motor Co.*, 872 F.3d 833, 841 (7th Cir. 2017).

Plaintiff claims Span retaliated against her for speaking to Kalantzis about him. Plaintiff complained to Kalantzis that Span did not meet with her, respond to her request for a pay raise, or assign her additional responsibilities. However, there is no allegation that Plaintiff mentioned racial discrimination or FMLA leave to Kalantzis. Asking for a pay raise and additional responsibilities, without indicating a connection to a protected class, is not a protected activity. See *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). Thus, Plaintiff's meeting with Kalantzis cannot form the basis of a retaliation claim.

By contrast, Plaintiff's use of FMLA leave and complaints of racial discrimination were protected activities. But, Plaintiff's evidence fails to make a sufficient showing that Defendant took any adverse action *because* she complained of discrimination or used FMLA leave. Plaintiff alleges that Span retaliated against her use of leave in his evaluation. However, that evaluation recognized her entitlement to such leave. It merely requested that she notify the departments when she was going to be out of the

office. In the absence of any showing of a causal connection between protected activity and an adverse employment action, Plaintiff's retaliation claim cannot survive summary judgment. See *King*, 872 F.3d at 841.

In sum, to survive summary judgment on her employment discrimination claims, Plaintiff needed to make a showing of evidence that would permit a reasonable fact finder to conclude that her race caused Defendant to take an adverse employment action. See *Ortiz*, 834 F.3d at 765. Plaintiff has not done so. There is no evidence of racial discrimination, a hostile work environment, or retaliation. Defendant is therefore entitled to judgment on all of Plaintiff's claims as a matter of law.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion for Summary Judgment (#34) is GRANTED. Judgment is entered in favor of Defendant and against Plaintiff.

(2) This case is terminated.

ENTERED this 20th day of November, 2017.

COLIN S. BRUCE
U.S. DISTRICT JUDGE